UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

DUKE NOTTINGHAM,

                Defendant.

CASE NO. 2:18-cr-00245-LK-1

ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

This matter comes before the Court on defendant Duke Nottingham's second Motion for Early Termination of Supervised Release. Dkt. No. 16; *see* Dkt. No. 4 (first motion). The Government opposes the request based on "the need for deterrence and public protection" and so Nottingham can "continue[] to receive mental-health treatment." Dkt. No. 18 at 1. United States Probation declines to endorse early termination but does not specifically oppose it, and notes that Nottingham has performed well under supervision, has never accrued a technical violation of the terms of his supervised release, and has numerous health problems. Dkt. No. 19 at 3. For the reasons discussed below, the Court commends Nottingham for his continued compliance and progress, but denies his motion based on review of the relevant statutory factors.

ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE - 1

## I.    BACKGROUND

On September 16, 2010, a jury convicted Nottingham of distributing material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2). Dkt Nos. 1, 2-2. On May 3, 2011, the U.S. District Court for the Eastern District of California sentenced Nottingham to 108 months of imprisonment and 120 months of supervised release. Dkt. No. 2-2 at 2–3. Nottingham began his term of supervision on July 19, 2018. Dkt. No. 1. This Court accepted jurisdiction over Nottingham's supervised release on October 11, 2018. *Id.*

On June 16, 2022, Nottingham filed a Motion for Early Termination of Supervised Release, which the Court denied. Dkt. Nos. 4, 11. On February 13, 2023 and October 20, 2025, the Court granted two requests to modify the terms of Nottingham's supervision, first allowing him to discontinue participation in sex offender treatment in return for submitting to periodic polygraph testing, and later removing the periodic polygraph testing requirement. Dkt. Nos. 12, 13.

On February 2, 2026, Nottingham filed his second motion for early termination of supervised release. Dkt. No. 16.

## II.    DISCUSSION

In support of his motion, Nottingham points out that he has never violated the terms of his supervised release. Dkt. No. 16 at 2–3. He represents that his health has deteriorated over the past few years, to the point that he is unstable on his feet, resulting in several bad falls, one of which put him in the hospital with a concussion in November 2025. *Id.* at 3. His two children are involved in his care and are reviewing options for senior care facilities. *Id.* Both children submitted letters in support of the motion. Dkt. Nos. 16-1, 16-2. Nottingham also highlights that he has suffered from major depressive disorder for many years, which he acknowledges presents "a risk of recidivism for his particular offense conduct," but maintains that he has done significant work to address his mental health diagnosis by consistently seeking treatment and regularly utilizing

strategies he learned in treatment. Dkt. No. 16 at 4; *see* Dkt. No. 16-1 (daughter's letter in support, describing Nottingham's efforts).[1] Nottingham states that "there is no indication that he has any inclination to discontinue" these mental health services. Dkt. No. 16 at 5. Combined with his ailing physical health, he argues that he presents minimal risk to the community and that the Court should exercise its discretion to grant early termination of supervised release. *Id.*

The Government argues that the "Court should deny Nottingham's motion given the nature and circumstances of his offense, the need for deterrence and public protection, and the need for continued mental-health treatment." Dkt. No. 18 at 4. The Government highlights the particularly serious nature of Nottingham's offense, and argues that Nottingham's risk of recidivism, even if small, is significant enough to potentially endanger public safety. *Id.*[2] The Government argues that "[c]ontinued supervision will also ensure that Nottingham continues to receive mental-health treatment" to deal with his major depressive disorder, which "could reduce the risk of recidivism." *Id.* at 5. Lastly, the Government points out that Nottingham's motion "does not specify how the conditions of his supervision impede" plans to transition him to senior care facilities to deal with his ailing physical health, and contends that Nottingham can work with Probation once a facility is identified. *Id.*

---

[1] "I have seen my father work extremely hard on managing his depression and anxiety by staying on his prescribed medications, attending regular therapy sessions, reaching out to family and mental health professionals when he is struggling, and choosing to not suffer in silence which allows the depression to worsen. He has also implemented multiple coping strategies that he has learned in therapy to help him to manage his anxiety and depression, such as writing his thoughts down (a form of journaling), working on positive self-talk, and identifying and stopping negative thought patterns before they become too consuming." Dkt. No. 16-1 at 2.

[2] According to the Presentence Report in this case, Nottingham was active in chat rooms including "#0!!!!!!!!!!Kids'R'US," "100%preteengirlsexpics," "ltlgirlsexchat," "dad&daughtersex," and "younggirlsex," and posted a message in a chat room three times, "Anyone trading pthc (preteen hard core) videos? (Gigatribe)." PSR at 4. At the time, Nottingham was sharing over 700 files totaling at least 15GB of data depicting child pornography, including children under the age of five, infants, and bondage. *Id.*; *see also id.* at 6 ("There were many videos of toddlers being raped and sodomized. Many of the victims appeared unconscious, with motionless, limp bodies. Many photographs showed toddlers with their arms and/or legs tied while they were raped."). Nottingham stated that "he knew he had a problem with viewing child pornography and explained he was aware it was wrong, but he disassociated himself from it" and "saw it as damage already done as the stuff was already out there." *Id.* at 5.

ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE - 3

Nottingham's Probation Officer confirms that his health is deteriorating. Dkt. No. 19 at 2.[3] The Officer also concurs that "he has not incurred any new criminal conduct or violations while on supervised release" and states that he is "deserving of our commendation" for his performance. *Id.* However, the Probation Officer does not endorse early termination after conducting an individual assessment of Nottingham's performance and weighing the nature and circumstance of the offense. *Id.*

Early termination of supervised release is governed by 18 U.S.C. § 3583(e)(1), which "provides that, after considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022) (quotation marks and citation omitted); *see also* 18 U.S.C. § 3583(e)(1). Section 5D1.4 of the Sentencing Guidelines states that "[a]ny time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice." District courts maintain discretion "to consider a wide range of circumstances when determining whether to grant early termination." *Ponce*, 22 F.4th at 1047 (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)). Application Note 1(B) to Section 5D1.4 of the Sentencing Guidelines sets forth various factors that a court "may wish to consider" in determining whether to terminate supervised release early:

---

[3] "I believe Mr. Nottingham is weary of supervision; he is 76 and his health problems are numerous. Last spring I attempted a home inspection and Mr. Nottingham fell to the floor while opening the front door. I had to assist him to stand up. His days are filled with doctors' appointments and mental health treatment. He has the support of his children, but he is isolated due to his depression." *Id.* at 3.

(i) any history of court-reported violations over the term of supervision;

(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii) the defendant's substantial compliance with all conditions of supervision;

(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Furthermore, Application Note 2 to Section 5D1.4 encourages the court "to ensure that any victim of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard" in the event the court entertains early termination.[4]

Based on the Court's review of the record and, in particular, the letters submitted by Nottingham's children, the Court acknowledges that Nottingham's health is deteriorating, and that he has performed admirably during the course of his supervised release. Nottingham appears committed to his mental health treatment and to using the tools he has learned in the course of that treatment, and the Court commends him for his progress.

Nevertheless, having considered the relevant factors required under Section 3583(e), the Court concludes that the interests of justice do not warrant the termination of the terms of his supervised release. Specifically, the Court finds that, in light of the nature and circumstances of Nottingham's offense and his history and characteristics, additional supervision will help to ensure

---

[4] There are many victims in this case whose trauma cannot be overstated. *See* PSR at 6–9.

ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE - 5

that Nottingham continues to receive mental health treatment, thereby reducing the risk of recidivism. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C)–(D). Nottingham points to the November 2025 amendments to the United States Sentencing Commission Guidelines Manual, which "remove[d] the policy statement recommending the statutory maximum term of supervised release for sex offense cases." Dkt. No. 16 at 6 (quoting *Amendments to the Sentencing Guidelines*, U.S. Sentencing Comm'n (Apr. 30, 2025) https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendlyamendments/202505_RF.pdf   [https://perma.cc/2VBQ-3HMZ])[5];   *see* 18 U.S.C. § 3553(a)(5) (in considering whether to terminate conditions of release, courts "shall consider . . . any pertinent policy statement . . . issued by the Sentencing Commission"). However, the Court, in its discretion, finds that the seriousness of the offense and the importance of continued monitoring of mental health treatment outweigh considerations of Nottingham's deteriorating physical health and his admirable commitment to abiding by the terms of his supervised release.

The Court encourages Nottingham and his children to work with Probation, once they locate a senior care facility that can help to address Nottingham's ailing health, to adjust the terms of supervision to accommodate such care as needed.

### III.   CONCLUSION

For the reasons stated herein, Nottingham's Motion for Early Termination of Supervised Release, Dkt. No. 16, is DENIED.

Dated this 13th day of March, 2026.

Lauren King
United States District Judge

---

[5] The effective date for the amendments is November 1, 2025.

ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE - 6